LEO ALLEN et al., Respondents, *v.* AUTO SPECIALTIES MFG. CO., Appellant.

Third Department, July 11, 1974.

· *Crapser & Kirsch* (*Vincent F. Kirsch* of counsel), for appellant.

*Leonard & Maginn* (*William F. Maginn, Jr.* of counsel), for respondents.

STALEY, JR., J. Defendant, Auto Specialties Mfg. Co., is a Michigan corporation, with its principal office located in that State. It manufactures auto specialty equipment including garage stands or truck lifts. It does not have a license to do business in New York, nor does it own or lease property within New York State.

On December 28, 1970, plaintiff, Leo Allen, an auto mechanic, was employed by Johns Chevrolet, Inc. in Massena, New York, which was the owner of a five-ton garage truck stand manufactured by defendant. On that date, while plaintiff was working on a pickup truck that was suspended on said truck stand, he was injured when the truck stand collapsed and the pickup truck fell on him. Thereafter, plaintiffs commenced this negligence action by service of the summons and complaint upon an officer of defendant in the State of Michigan.

Special Term held that, although plaintiffs failed to prove that the court had jurisdiction of the action, the moving affidavits submitted by defendant were sufficient to establish jurisdiction and, on that basis, denied the motion. Defendant's affidavits admit that it has an agent located in Rochester, New York, who secures offers to purchase its products for buyers within New York, and that, upon acceptance of such order, defendant ships its products to the buyers. Defendant's sales representative is designated as agent and is compensated on a commission basis. Defendant further admits that its employees solicit prospective vendees within New York and that such vendees constitute national and regional accounts of defendant. Special Term

denied the motion on the ground that the affidavits submitted on the motion were sufficient to establish jurisdiction of the court pursuant to the provisions of CPLR 302.

Clause (ii) of paragraph 3 of subdivision (a) of CPLR 302 provides that a court may exercise personal jurisdiction over any nondomiciliary who "commits a tortious act without the state causing injury to person or property within the state" if he "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."

The test of whether a defendant expects or should reasonably expect his act to have consequences within the State is an objective rather than a subjective one. (*Brown* v. *Erie-Lackawanna R.R. Co.*, 54 Misc 2d 225.) Moreover, the statutory requirement of foreseeability relates to forum consequences generally and not to the specific event which produced the injury within the State. The statute does not require the defendant to foresee the specific consequences in New York of its allegedly tortious act. All that must be found is that "the presence of defendant's product in New York with some potential consequence was reasonably foreseeable rather than fortuitous." (*Tracy* v. *Paragon Contact Lens Lab.*, 44 A D 2d 455, 458.) Under the circumstances here, defendant should have foreseen the forum consequences of its alleged tortious act by virtue of the fact that it had entered into agreements with agents to solicit business in New York and further solicited business by its own employees. (*Gonzales* v. *Harris Calorific Co.*, 64 Misc 2d 287, affd. 35 A D 2d 720.)

Since the statute requires only that consequences in New York be foreseeable, the collateral activities relative to revenue need not occur in New York so long as they are interstate and substantial. What constitutes "substantial revenue" under CPLR 302 (subd. [a], par. 3, cls. [i] and [ii]) is not defined in the statute. The phrase should be construed to require comparison between a defendant's gross sales revenue from interstate or international business with total gross sales revenue, and between a defendant's net profit from interstate or international business with total net profit. (*Newman* v. *Charles S. Nathan, Inc.*, 55 Misc 2d 368; *Gillmore* v. *J. S. Inskip, Inc.*, 54 Misc 2d 218.) There is no evidence in the record as to the percentage of defendant's business derived from interstate or international commerce. We, therefore, believe that this issue of substantial revenue should be remitted for a hearing.

The order should be reversed, on the law and the facts, and the matter remitted to Special Term for further proceedings not inconsistent herewith, without costs.

HERLIHY, P. J., COOKE, SWEENEY and KANE, JJ., concur.

Order reversed, on the law and the facts, and matter remitted to Special Term for further proceedings not inconsistent herewith, without costs.